IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| KIRK DONAVAN RAMEY, | ) | |
| --- | --- | --- |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CASE NO. 6:19-cv-00003 |
| | ) | |
| DEPUTY RYAN J. HARTMAN, | ) | |
| In his personal capacity, | ) | |
| *Defendant*. | ) | |

**BRIEF IN OPPOSITION TO MOTION TO DISMISS**

COMES NOW the Plaintiff, Kirk Donovan Ramey ("Mr. Ramey"), by counsel, and briefs this Court in opposition to the Defendant's Motion to Dismiss (ECF 10) to-wit:

**I. THE DASHCAM VIDEO SUPPORTS SUMMARY JUDGMENT FOR THE PLAINTIFF, NOT THE DEFENDANT**

The Defendant asserts that the dashcam video ("Video" - ECF 11-1) of the stop and the arrest of the Plaintiff support summary judgment for the Defendant on the following grounds:

- That the Plaintiff consented to his arrest.

- That the Defendant had probable cause to arrest the Plaintiff.

- That the Defendant lacked malice and was not deliberately indifferent to the rights of the Plaintiff

- The Defendant is entitled to qualified immunity because a reasonable officer would have believed he had probable cause to arrest the Plaintiff under the facts of the case.

Each of these assertions is directly contradicted by the dashcam recording. If anything, the video supports summary judgment for the Plaintiff. Accordingly, the Defendant's motion to dismiss (and his request for summary judgment) is misguided and should be overruled.

### A. MR. RAMEY DID NOT CONSENT TO BEING ARRESTED

Mr. Ramey plainly stated "I don't care to be arrested." Video 18:10  Mr. Ramey explained that we wanted to take a blood test because he knew he could pass it.  Video 16:48  Mr. Ramey's refusal to accede to Deputy Hartman's unlawful "alternative" demands does not constitute consent to his own unlawful arrest.

### B. DEPUTY HARTMAN LACKED PROBABLE CAUSE TO ARREST MR. RAMEY

Deputy Hartman effectively concedes that he lacked probable cause to arrest Mr. Ramey in his Motion to Dismiss when he argues that Deputy Hartman "...at multiple times explain[ed] that there [were] other alternatives and that Plaintiff may [have acceded to in order to] avoid arrest."  Motion to Dismiss, p. 5  The "other alternatives" were investigatory techniques (field sobriety tests) that Mr. Ramey had no duty to perform.  Obviously, Deputy Hartman lacked probable cause to arrest Mr. Ramey for intoxication because his investigation was incomplete. Why would he need to conduct field sobriety tests if he already had probable cause to arrest?

Although he asserts new grounds for his purported probable cause to arrest Mr. Ramey in in his Motion to Dismiss, the dashcam video proves Deputy Hartman plainly stated his purported probable cause to arrest Mr. Ramey at the scene: "if you refuse all these tests, all I can go off of is the odor of alcoholic beverage and your tracking history of your vehicle."  Video 17:32

The video offers stark evidence of Deputy Hartman's fabrication of false evidence.  He first stated that he detected a "faint hint of alcohol" in the rental car Mr. Ramey drove. Video 9:42  After removing Mr. Ramey from the vehicle, he again stated that he detected a "faint odor of alcohol" on his person.  Video 11:24  When Mr. Ramey began protesting his detention, Deputy

-2-

Case 6:19-cv-00003-NKM-RSB   Document 17   Filed 06/26/19   Page 2 of 7   Pageid#: 62

### A. MR. RAMEY DID NOT CONSENT TO BEING ARRESTED

Mr. Ramey plainly stated "I don't care to be arrested." Video 18:10  Mr. Ramey explained that we wanted to take a blood test because he knew he could pass it.  Video 16:48  Mr. Ramey's refusal to accede to Deputy Hartman's unlawful "alternative" demands does not constitute consent to his own unlawful arrest.

### B. DEPUTY HARTMAN LACKED PROBABLE CAUSE TO ARREST MR. RAMEY

Deputy Hartman effectively concedes that he lacked probable cause to arrest Mr. Ramey in his Motion to Dismiss when he argues that Deputy Hartman "...at multiple times explain[ed] that there [were] other alternatives and that Plaintiff may [have acceded to in order to] avoid arrest."  Motion to Dismiss, p. 5  The "other alternatives" were investigatory techniques (field sobriety tests) that Mr. Ramey had no duty to perform.  Obviously, Deputy Hartman lacked probable cause to arrest Mr. Ramey for intoxication because his investigation was incomplete. Why would he need to conduct field sobriety tests if he already had probable cause to arrest?

Although he asserts new grounds for his purported probable cause to arrest Mr. Ramey in in his Motion to Dismiss, the dashcam video proves Deputy Hartman plainly stated his purported probable cause to arrest Mr. Ramey at the scene: "if you refuse all these tests, all I can go off of is the odor of alcoholic beverage and your tracking history of your vehicle."  Video 17:32

The video offers stark evidence of Deputy Hartman's fabrication of false evidence.  He first stated that he detected a "faint hint of alcohol" in the rental car Mr. Ramey drove. Video 9:42  After removing Mr. Ramey from the vehicle, he again stated that he detected a "faint odor of alcohol" on his person.  Video 11:24  When Mr. Ramey began protesting his detention, Deputy

Hartman changed his story to claim that Mr. Ramey had a "very strong odor of alcoholic beverage on his person." Video 16:08

Deputy Hartman faces three fatal problems in his reliance upon the purported odor of alcohol to create the probable cause he needed to arrest Mr. Ramey:

1. The complaint alleges plainly that Deputy Hartman lied about detecting any odor of alcohol. Complaint ¶17 Nothing in the video contradicts or refutes this assertion. Thus, the allegation that Deputy Hartman fabricated the odor of alcohol must be accepted as true.

2. The different accounts Deputy Hartman gave regarding his purported detection of an odor of alcohol, as recorded on the dashcam video, directly impeach his credibility, thereby leaving it to the jury to accept or reject any or all of these accounts.

3. Even if Deputy Hartman had actually detected a strong odor of alcohol on Mr. Ramey's person, the odor alone did not create the probable cause necessary to arrest him.

Deputy Hartmans' sole remaining basis of probable cause, the tracking history of the vehicle, is recorded on the dascham video recording. The video does not show Mr. Ramey swerving or weaving and it does not show him even contacting the "fog line" as asserted. Instead, it shows Mr. Ramey driving in at a steady speed within his lane of travel until he was stopped. Furthermore, Deputy Hartman only asserted the tracking history of the vehicle as a basis for the stop after he fabricated the evidence of an odor of alcohol. He made no mention of weaving or swerving, but as noted above, he clearly stated that he stopped Mr. Ramey only because the taillights of the vehicle were not illuminated. Indeed, Deputy Hartman directly

-3-

Case 6:19-cv-00003-NKM-RSB   Document 17   Filed 06/26/19   Page 3 of 7   Pageid#: 63

informed Mr. Ramey that "the reason I stopped you today, sir, was that you have no rear lights on your vehicle at all." Video 3:46

In his Motion to Dismiss, Deputy Hartman asserts additional purported grounds for arresting Mr. Ramey; namely that Mr. Ramey: (i) avoided eye contact, (ii) exhibited slow speech, (iii) had difficulty communicating about the operation of the lights, and (iv) had difficulty balancing himself while walking. None of these grounds are valid.

The dashcam video does not show Mr. Ramey avoiding eye contact and there is no mention of him doing so. Thus, the allegation falls outside of the pleadings and must be discounted.

The video also shows Mr. Ramey speaking appropriately and answering questions accurately in normal speech without slurring. He did not speak slowly and all of his statements and responses were appropriate and articulate.

The video also shows that not only did Mr. Ramey explain why he was driving without taillights, but also that Deputy Hartman accepted his reasonably explanation that Mr. Ramey was unfamiliar with the daytime running lights that his rental car used. Indeed, Mr. Ramey was not charged with any traffic offenses.

Finally, Mr. Ramey had difficulty walking because he was recovering from back surgery and can be seen on the dashcam video demonstrating his surgical wound to Deputy Hartman. In fact, Deputy Hartman realized that this wound explained any difficulty Mr. Ramey had in mobility. Video 15:11 Moreover, there is nothing in the video to show that Mr. Ramey had any difficulty balancing himself.

-4-

Case 6:19-cv-00003-NKM-RSB   Document 17   Filed 06/26/19   Page 4 of 7   Pageid#: 64

Mr. Ramey was stopped only because his taillights of the rental car he was driving were not illuminated. This stop was legal and was supported by probable cause because the taillights were out. However, during the stop, Mr. Ramey offered, and Deputy Hartman accepted, the explanation that the rental car was equipped with daytime running lights and that Mr. Ramey was unfamiliar with their operation. Mr. Ramey explained that he mistakenly assumed that the taillights were on because the headlights were on. After accepting this explanation, absent probable cause to believe that another crime had occurred or a reasonable and articulable suspicion to believe that some other criminal activity was afoot, Deputy Hartman could either choose to issue a summons for the violation or cease his detention of Mr. Ramey. What Deputy Hartman was not permitted to do was precisely what he did – namely to extend the detention with nothing more than a hunch that Mr. Ramey was intoxicated.

**C. THE DASHCAM VIDEO SUPPORTS THE ALLEGATION THAT DEPUTY HARTMAN ACTED WITH MALICE OR WITH DELIBERATE DISREGARD OF MR. RAMEY'S RIGHTS.**

The video documents or is, at the very least, entirely consistent with the allegation that Deputy Hartman fabricated evidence to arrest Mr. Ramey without cause. This is both a malicious and a deliberate act. Thus, this single allegation is sufficiently pleaded and states a plausible claim.

However, the video contains further indicia of malice and deliberation. It shows Deputy Hartman continuing to badger and question Mr. Ramey after Mr. Ramey clearly and unequivocally invoked his right to remain silent. Video 18:29  It shows that Deputy Hartman was frustrated with Mr. Ramey and suggested at the scene that Mr. Ramey was using a "ploy" to sue him. Video 16:57  The jury could conclude that Deputy Hartman became angry with Mr.

-5-

Case 6:19-cv-00003-NKM-RSB   Document 17   Filed 06/26/19   Page 5 of 7   Pageid#: 65

Ramdey and acted with either or both of actual malice and deliberate disregard of Mr. Ramey's rights in fabricating evidence to arrest him without probable cause.

Mr. Ramey stated that he would not speak any longer and asked Deputy Hartman if he the right to remain silent, to which Deputy Hartman replied "100 percent." Video 18:29 Nevertheless, Deputy Hartman continued badgering and questioning Mr. Ramey.

**D. DEPUTY HARTMAN IS NOT ENTITLED TO QUALIFIED IMMUNITY**

The Complaint alleges that Deputy Hartman fabricated the evidence (the odor of alcohol) that he concedes forms the primary basis of his argument that he had probable cause to arrest Mr. Ramey. The video is entirely consistent with this allegation. Thus, the allegation must be accepted as true. No officer who fabricates evidence to falsely arrest a subject is entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, Deputy Hartman's Motion to Dismiss should be overruled.

Respectfully submitted,

**KIRK DONOVAN RAMEY**
By Counsel

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By:/s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Plaintiff**
    **Virginia State Bar No. 72326**

-6-

Case 6:19-cv-00003-NKM-RSB   Document 17   Filed 06/26/19   Page 6 of 7   Pageid#: 66

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing brief on this 26th day of June, 2019, using the Court's CM/ECF system which will transmit a true and accurate copy to each counsel of record.

>**/s/ M. Paul Valois**
>**M. Paul Valois**