CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/25/2020
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KIRK DONOVAN RAMEY,<br><br>        *Plaintiff*,<br><br>v.<br><br>DEPUTY RYAN J. HARTMAN,<br><br>        *Defendant*. | CASE NO. 6:19-cv-00003<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Kirk Ramey brought this case against Deputy Ryan Hartman, claiming false arrest and malicious prosecution under federal and state law, arising out of a traffic stop and Plaintiff's subsequent arrest. This matter is before the Court on Deputy Hartman's Motion to Dismiss, Dkt. 10, and Motion for Summary Judgment, Dkt. 24. For the following reasons, the Court will grant Deputy Hartman's Motion for Summary Judgment.

Background

  On April 7, 2018, at 1:23 a.m., Deputy Hartman initiated a traffic stop of Plaintiff who was driving toward Bedford on Route 460. As Deputy Hartman's dashcam video reflects, Plaintiff was driving in a white SUV that did not have tail lights that were turned on. Video, Dkt. 12, 1:21:00–1:24:00.[1]

  Deputy Hartman exited his vehicle and approached the driver's side of Plaintiff's SUV. *Id.* 1:24:25–1:24:32. Deputy Hartman informed Plaintiff that that the reason he stopped Plaintiff was

---

[1] Although not necessary to its resolution of this case, the Court further notes that Plaintiff's SUV touched the fog line several times in the minutes leading up to the traffic stop. *See, e.g.*, Video 1:21:54, 1:22:04, 1:22:10.

1

because he had been driving without rear lights. *Id.* 1:24:32–1:24:40. Deputy Hartman asked Plaintiff for his license and registration, and they discussed the fact that Plaintiff was driving a rental car. *Id.* 1:24:45–1:25:20. At that point, Deputy Hartman asked Plaintiff for the first time whether he had "anything to drink" that evening. *Id.* 1:25:40–1:25:45. Though Plaintiff's response from his vehicle was not audible on the video, Deputy Hartman responded, "nothing whatsoever?" and also asked Plaintiff to look at him because Deputy Hartman had perceived that Plaintiff "did not want to make eye contact." *Id.* 1:25:40–1:25:50.[2] After discussing why Plaintiff's rear lights might not have been activated, *id.* 1:26:00–1:27:00, Deputy Hartman returned to his vehicle to check Plaintiff's license and registration and conduct a warrant check; it confirmed that Plaintiff had a valid license and had no warrants, *id.* 1:27:15–1:28:55.

After Deputy Hartman returned to Plaintiff's SUV, Deputy Hartman again asked Plaintiff whether he had had anything to drink because there was "a faint hint of it in the car." *Id.* 1:30:25–1:30:32; *see also* Dkt. 25-1 at 7 (writing: "I again detected an odor of an alcoholic beverage this time stronger," which was "sustained when [Plaintiff] was speaking and looking in my direction"); Dkt. 25-1 at 2 ("faint odor" of alcohol "on driver"). Plaintiff's response at this point was not audible from the dashcam video, but Deputy Hartman's police report and the later discussion between them confirms Plaintiff again denied having had any alcohol. *See id.* Deputy Hartman asked Plaintiff to get out of the car. Video 1:30:30–1:31:05.

After Plaintiff exited his SUV, he placed his hand on the side of his SUV to brace himself as he walked with Deputy Hartman toward the police car. *Id.* 1:31:05–1:31:15. At this point,

---

[2] The Court notes that Deputy Hartman's report following Plaintiff's arrest is consistent in describing that "I asked the driver if he had consumed any alcoholic beverages and he stated that he had not." Dkt. 25-1 at 7; *see also* Dkt. 25-1 at 2 (stating that Plaintiff "denied consuming any" alcohol).

2

Deputy Hartman and Plaintiff were positioned in front of the dashcam. Plaintiff then volunteered to Deputy Hartman—saying, "before we do this"—that Plaintiff had back surgery, and he lifted the back of his jacket to show Deputy Hartman. *Id.* 1:31:40–1:32:05. Plaintiff told Deputy Hartman that was why he "wasn't walking straight." *Id.* 1:32:00–1:32:10.

Deputy Hartman informed Plaintiff that he smelled "a faint odor of an alcoholic beverage on his breath, on his person." *Id.* Deputy Hartman again asked Plaintiff how much he had to drink, saying, "I've been doing this for a while, and I know what I smell." *Id.* 1:32:20–1:32:30. Plaintiff responded that he had one drink, three hours earlier. *Id.* 1:32:30–1:33:00. Plaintiff said that he did not tell Deputy Hartman about it before because he had only been pulled over for nonfunctioning tail-lights, not swerving. *Id.*[3] While Plaintiff and Deputy Hartman discussed the taillights several times during their encounter, Plaintiff later summarized the issue in his brief that he had explained to Deputy Hartman "that the rental car was equipped with daytime running lights and that [Plaintiff] was unfamiliar with their operation," and that he had "mistakenly assumed the taillights were on because the headlights were on." Dkt. 17 at 5; *see also* Video 1:36:35–1:36:45 (after Deputy Hartman told Plaintiff that his taillights had not been on, Plaintiff stated "I absolutely believe you because the switch was not on.").

Deputy Hartman asked Plaintiff whether—other than his back surgery—he had any other relevant medical history. *Id.* 1:33:30–1:33:45. Plaintiff responded that he had glaucoma, and that he "had a letter, maybe in the car, explaining why [his] eyes are red." *Id.* Plaintiff further explained that the drink he previously described was a beer, perhaps 10 ounces, at a restaurant in Roanoke.

---

[3] At this point, Deputy Hartman and Plaintiff moved under an awning to briefly get out of the rain—and outside of the field of vision of the dashcam—although their conversation continued to be recorded clearly.

*Id.* 1:34:30. Deputy Hartman said that he would take Plaintiff's glaucoma and back surgery into account and asked Plaintiff to perform modified field sobriety tests, which Plaintiff declined to do several times. Plaintiff stated that he would rather take a blood alcohol test at the hospital because he thought he could pass that. *Id.* 1:34:40–1:35:30. Plaintiff said that he "can't pass" the field sobriety tests because of a condition of his eyes, as they would not be able to track a moving light. Deputy Hartman warned Plaintiff that, if he declined the field sobriety tests, he would have to place Plaintiff under arrest, and Plaintiff said he understood. *Id.* Deputy Hartman also advised him that although Plaintiff had given him a "good explanation" for his inability to walk on account of back surgery, Plaintiff had a "very strong odor of alcoholic beverage on [his] person." *Id.* 1:36:50–1:37:20. Deputy Hartman also asked whether this was a "ploy" to attempt to raise a later claim against him for false arrest; Plaintiff stated that he would not continue speaking. *Id.* 1:37:30–1:38:00. Thereafter, Deputy Hartman placed Plaintiff under arrest for being drunk in public. *Id.* 1:44:45. Deputy Hartman transported Plaintiff to the Magistrate, who issued a warrant for that offense, and Plaintiff received a summons for a court date. Dkt. 25-1 at 7–9. He was then released, and he called for a ride. *Id.* at 7.

Reference is made in Plaintiff's briefs and in the Complaint that, after Plaintiff was released from custody, he went to the hospital to test his blood alcohol content, and that reflected that he had no alcohol in his bloodstream. Dkt. 9 at 3–4; Dkt. 26 at 2. However, Plaintiff never introduced any evidence in the record on the issue.

In December 2018, Plaintiff filed a Warrant in Debt against Deputy Hartman in Bedford County General District Court. Dkt. 1-1. In January 2019, Deputy Hartman removed the case to this Court on the basis of federal question jurisdiction. Dkt. 1.

In June 2019, Deputy Hartman filed a Motion to Dismiss or alternatively Motion for Summary Judgment, which attached the dashcam video for the Court's consideration in assessing probable cause. Dkt. 10. The Court heard oral argument on the Motion in August 2019. Thereafter, Deputy Hartman filed a Motion for Summary Judgment in January 2020. Dkt. 24. The Motion for Summary Judgment was fully briefed in February 2020 and this Court heard argument on the Motion. Dkt. 31. At oral argument, the parties agreed that they needed no further discovery, and that the Motion for Summary Judgment was ripe for disposition by the Court.

## Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the Court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catretti*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant. *Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert City*, 48 F.3d 810, 818 (4th Cir. 1995). But where the record contains unchallenged video that captured the

5

events at issue, the Court need only credit the plaintiff's allegations of the events to the extent that they are not contradicted by the video evidence. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Analysis

1. *Federal Claims*

Plaintiff raises claims for unlawful seizure (that is, false arrest) and malicious prosecution, alleging that Deputy Hartman detained and arrested him and obtained a criminal warrant for public intoxication against him, all without probable cause. Dkt. 9 at 5–6.

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). In order to state a claim for false arrest or malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that he was arrested without probable cause. *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974); *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017); *Clem v. Jenkins*, No. 3:18-cv-49, 2019 WL 181124, at *4 (W.D. Va. Jan. 11, 2019).

An officer has probable cause to justify an arrest if the "facts and circumstances within the officer's knowledge" are "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 343–44 n.13 (1983). Moreover, "[p]robable cause is not a high bar," and it "does not require officers to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 588 (2018). Probable cause is assessed by reference to the facts known to the officer at the time of the arrest. *United States v.*

6

*Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). "An arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S.Ct. at 584 n.2.

In Virginia, it is "unlawful for any person to drive or operate any motor vehicle … (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article," or "(ii) while such person is under the influence of alcohol." Va. Code § 18.2-266. "When a state or local enforcement officer has probable cause to suspect a person is driving while intoxicated in violation of § 18.2-266, the officer may arrest the person without a warrant within three hours of the alleged offense, 'whether or not the offense was committed in such officer's presence.'" *Clem*, 2019 WL 181124, at *4 (quoting Va. Code § 19.2-81(D)). In Virginia, "[i]f any person . . . is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor." Va. Code § 18.2-388. Intoxication is itself defined as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." *Id.* § 4.1-100.

The Court concludes that there is no genuine dispute of material fact that Deputy Hartman had probable cause to arrest Plaintiff for driving while intoxicated.

At the outset, the Court notes that Plaintiff concedes that Deputy Hartman was justified in stopping Plaintiff's SUV because the taillights were not working or activated. Dkt. 17 at 5 (writing that "[t]his stop was legal and was supported by probable cause because the taillights were out."). Rather, Plaintiff contends that he had "offered, and Deputy Hartman accepted, the explanation that the rental car was equipped with daytime running lights and that [Plaintiff] was unfamiliar with

their operation." *Id.* Indeed, Plaintiff asserts several times that Deputy Hartman "accept[ed] this explanation." Dkt. 17 at 4–5. Elsewhere, Plaintiff argues that he "had difficulty walking because he was recovering from back surgery," and that "Deputy Hartman realized that this wound explained any difficulty [Plaintiff] had in mobility." *Id*. at 4. And in the dashcam video, Plaintiff told Deputy Hartman he had "maybe" had a letter in his car explaining redness in his eyes. Dkt. 12 1:33:30–1:33:45. Plaintiff concludes that "absent probable cause to believe that another crime had occurred" or "reasonable and articulable suspicion that some other criminal activity was afoot— Deputy Hartman could either issue a summons for the violation or cease his detention of [Plaintiff]." Dkt. 17 at 5. These arguments rest upon a mistaken premise.

To be sure, after he was pulled over, Plaintiff offered explanations to Deputy Hartman for his difficulty walking (on account of back surgery); redness in his eyes (on account of a medical condition); refusal to perform field sobriety tests (both on account of back surgery and medical condition in his eyes); the odor of alcohol on his person and car (on account of consuming just one ten ounce beer three hours earlier); and the fact that the taillights were not on (on account of his unfamiliarity with the operation of the rental car). To the extent Plaintiff disputed at oral argument that his eyes were red, or disputed he had difficulty walking, *e.g.*, Dkt. 17 at 4, the Court concludes there is no genuine issue of material fact on those points. The dashcam video clearly shows Plaintiff steadied himself as he walked by placing his hand on his SUV, Video 1:31:00–1:31:15, and Plaintiff's contemporaneous explanations to Deputy Hartman reflected an acknowledgment of his "trouble walking straight," *id.* 1:32:00–1:32:10, and that his eyes were red, *id.* 1:33:40–1:33:50.

Plaintiff also errs in asserting that Deputy Hartman accepted or was required to accept at face value Plaintiff's explanations. The Supreme Court has unequivocally held that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."

8

*Wesby*, 138 S. Ct. at 588; *see also Torchinsky v. Siwinksi*, 942 F.2d 257, 264 (4th Cir. 1991) (holding that a reasonable officer need not "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established"). In *Wesby*, the Court considered whether police officers had probable cause to make arrests of persons found having a "raucous, late night party in a house they did not have permission to enter." *Id.* at 582. Several arrestees had offered innocent explanations, such as that they were invited to the house for a bachelor party. *Id.* at 589. The Court cautioned that such "identified innocent explanations" for circumstances suggestive of criminal activity should not be considered "in isolation," because "a factor viewed in isolation is often more readily acceptable to an innocent explanation than one viewed as part of a totality." *Id.* (internal quotation marks omitted). Thus, the pertinent inquiry is "whether a reasonable officer could conclude—considering all the surrounding circumstances, including the plausibility of the explanation itself—that there was a substantial chance of criminal activity." *Id.* at 588 (internal quotation marks omitted).

Considering the totality of the circumstances then known to Deputy Hartman, including the various explanations Plaintiff had given, there is no genuine dispute of material fact that a reasonable officer would have probable cause to arrest Plaintiff for driving under the influence. Plaintiff was driving at night without taillights, *id.* 1:21:00–1:24:00, and he conceded to Deputy Hartman had not turned the switch on to activate them, *id.* 1:36:35–1:36:45. As Deputy Hartman explained, failure to activate lights at night could be a sign of impairment. *Id.* 1:33:25–1:33:35. *See, e.g.*, *Reiver v. District of Columbia*, 925 F. Supp. 2d 1, 9 (D.D.C. 2013) (probable cause for DUI supported by fact that plaintiff was operating his vehicle without lights at night in the rain, among other factors); *Gunnell v. Commonwealth*, No. 0475-13-3, 2014 WL 1041421, at *3 (Va. Ct. App. Mar. 14, 2014) (unpublished) (operating a vehicle at night with non-illuminated

9

headlights and taillights contributed to probable cause for DUI, among other factors). Then, after Deputy Hartman pulled over Plaintiff, he detected an odor of alcohol in Plaintiff's SUV. Video 1:30:25–1:30:32. Plaintiff told Deputy Hartman he had not consumed any alcohol at first, but later, upon further inquiry, Plaintiff changed his story and said he drank one beer several hours prior. *Id.* 1:25:40–1:25:50, 1:32:30–1:33:00, 1:34:30. Next, after Plaintiff exited his SUV, Deputy Hartman detected "a faint odor of an alcoholic beverage on his breath, on his person," *id.* 1:32:20–1:32:30, and later, Deputy Hartman detected a "very strong odor of alcoholic beverage on [his] person." *Id.* 1:36:50–1:37:20; In addition, Plaintiff admittedly had "trouble walking straight" and had to steady himself against his SUV as he walked with Deputy Hartman. *Id.* 1:32:00–1:32:10. Plaintiff also acknowledged that his eyes were red, *id.* 1:33:40–1:33:50, and Plaintiff refused to take field sobriety tests, *id.* 1:34:40–1:35:30.

Courts have found probable cause to arrest a driver for driving under the influence based upon these factors. *See, e.g.*, *Jones v. Commonwealth*, 688 S.E.2d 269, 273 (Va. 2010) (finding probable cause to arrest defendant for driving under the influence where defendant had bloodshot eyes, slurred speech and alcohol on his breath; and holding that defendant's "refusal to perform any field sobriety tests was relevant evidence in the probable cause determination"); *Wohlford v. Commonwealth*, 351 S.E.2d 47, 49 (Va. Ct. App. 1986) ("The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause of the arrest."); *Cooper v. City of Virginia Beach, Va.*, 817 F. Supp. 1310, 1318 (E.D. Va. 1993) (probable cause determination supported by odor of alcohol on the plaintiff and the plaintiff's admission that he had been drinking beer earlier that night); *see also Reiver*, 925 F. Supp. 2d at 9 (concluding that "driving without headlights at night in the rain" showed "impaired judgment").

Plaintiff raises several other arguments against a finding of probable cause—none of which has any merit.

First, Plaintiff argues that Deputy Hartman "fabricated" evidence concerning whether he smelled an odor of alcohol on Plaintiff, because Deputy Hartman initially stated that he smelled a "faint hint" of alcohol from the vehicle and on Plaintiff's person, and later, after Plaintiff refused to take field sobriety tests, Deputy Hartman said he smelled a "very strong odor" of alcohol coming from Plaintiff's person. Dkt. 17 at 2–3, 5–7; Dkt. 26 at 1–2. But Plaintiff lacks any evidence of fabrication, and such unsupported speculation cannot defeat summary judgment. *See Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986). Indeed, it stands to reason that the odor of alcohol coming from a vehicle could be different from that coming from the driver; and Plaintiff has no more than speculation to assert that Deputy Hartman's statement that he at first smelled a "faint odor" of alcohol coming from Plaintiff's person, and later, a "very strong odor" of the same, was a fabrication. Nor can Plaintiff rely on his allegations in the complaint that Deputy Hartman lied in order to defeat summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) ("The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing there is a genuine issue for trial.") (cleaned up).

Second, Plaintiff argues that the only evidence Deputy Hartman could have relied on in making a probable cause determination was the odor of alcohol coming from his person, and the "tracking history" of Plaintiff's SUV, because Deputy Hartman told him: "If you refuse all these [field sobriety] tests, all I can go off of is the odor of alcoholic beverage and your tracking history of your vehicle." Dkt. 17 at 2–4. But the probable cause inquiry is not whether Deputy Hartman himself focused exclusively on those two or other factors. Rather, the Court "examine[s] the events

11

leading up to the arrest, and then decide[s] whether these historical facts, *viewed from the perspective of an objectively reasonable police officer*, amount to probable cause." *Wesby*, 138 S. Ct. at 586 (cleaned up) (emphasis added). And that objective inquiry is based on the "totality of the circumstances." *Id.*

Third, Plaintiff asserts that Deputy Hartman showed "malice" or "deliberately disregarded" Plaintiff's rights. Dkt. 17 at 5–6. But Plaintiff's allegation that Deputy Hartman lied is no more than unsupported speculation, which cannot withstand the consistent evidence from the dashcam and Deputy Hartman that there was an odor of alcohol which got stronger as Plaintiff exited his SUV. Moreover, the dashcam recording contradicts Plaintiff's arguments that Deputy Hartman acted with "malice" and "badger[ed]" Plaintiff after he "clearly and unequivocally invoked his right to remain silent." *Id.* at 5. After Plaintiff said, "I'm going to stop talking now," and "I'm not going to talk anymore," Deputy Hartman said "O.K.," then *Plaintiff* continued to make his case why he thought Deputy Hartman was "fishing" for something beyond a traffic violation. Video 1:37:35–1:38:45. And when Plaintiff later asked Deputy Hartman whether he had the right to remain silent, Deputy Hartman said "100 percent. I'm not questioning you on anything at this point, so if you don't want to talk, you don't have to talk. I was just trying to give you the benefit, sir, 100 percent." Plaintiff responded, "I'll remain silent," and Deputy Hartman did not ask him any other questions and placed him under arrest. *Id.* 1:39:00–1:39:40. The dashcam recording definitively rejects Plaintiff's assertions that Deputy Hartman acted with "malice" or "deliberate disregard" to his constitutional rights.

In sum, the Court concludes there is no genuine dispute of material fact that Deputy Hartman had probable cause to arrest Plaintiff for driving under the influence in violation of Virginia Code § 81.2-266. And while Deputy Hartman arrested Plaintiff and he was subsequently

booked for public intoxication in violation of Va. Code § 18.2-388, Deputy Hartman need only have "had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S. Ct. at 584; *see also Cooper*, 817 F. Supp. at 1318 n.7 ("The Fourth Amendment does not require an arresting officer to be infallible in his assessment of whether a crime has been committed. It simply demands that probable cause support any arrest."). Because the Court has determined Deputy Hartman had probable cause to arrest Plaintiff for driving under the influence, the Court need not consider whether Deputy Hartman had probable cause to arrest Plaintiff for being drunk in public.

Even if probable cause did not exist—and this Court concludes that it did—Deputy Hartman is still entitled to qualified immunity. *See* Dkt. 11 at 11–12; Dkt. 25 at 5 n.3; Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity ensures that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 972 F.2d 295, 298 (4th Cir. 1992). A defense of qualified immunity involves a "two-step" inquiry, asking "first whether a constitutional violation occurred and second whether the right violated was clearly established." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

Deputy Hartman did not commit any constitutional violation, and even if he did, the right violated was not clearly established. There is no genuine issue of material fact that a reasonable law enforcement officer would conclude there existed probable cause to arrest Plaintiff for diving under the influence, considering that: Plaintiff's taillights were not on when he was driving; when Plaintiff was stopped, Deputy Hartman smelled alcohol from Plaintiff's SUV and then from

Plaintiff's person; that Plaintiff initially lied about not drinking and then later admitted to drinking earlier that evening; that Plaintiff's eyes were bloodshot; that Plaintiff had difficulty walking upon exiting his SUV; and that he refused to perform any field sobriety tests. These undisputed facts more than establish probable cause, but in any event, caselaw demonstrates that courts have held reasonable officers have found probable cause under similar circumstances. *See, e.g.*, *Jones*, 688 S.E.2d at 273 (finding probable cause to arrest defendant for driving under the influence where defendant had bloodshot eyes, slurred speech and alcohol on his breath; and holding that defendant's "refusal to perform any field sobriety tests was relevant evidence in the probable cause determination"); *Wohlford*, 351 S.E.2d at 49 ("The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause of the arrest."). Accordingly, Deputy Hartman is entitled to qualified immunity even if probable cause was lacking.

The Court therefore will award summary judgment to Deputy Hartman on Plaintiff's federal law claims of unlawful seizure (false imprisonment and false arrest) in Count One, and malicious prosecution in Count Two.[4]

2. *Virginia State Law Claims*

Plaintiff also raises claims of assault and battery (count three), false imprisonment (four), and malicious prosecution (five), all under the Virginia common law against Deputy Hartman. Dkt. 9 at 6–8. The Court holds that Deputy Hartman is entitled to summary judgment on Plaintiff's state law claims as well.

---

[4] In view of its ruling on probable cause, the Court need not consider Deputy Hartman's alternative argument that Plaintiff consented to his arrest. Dkt. 11 at 5–6.

The common thread underlying each of these Virginia state law claims is that, if Deputy Hartman had probable cause to make the arrest, liability cannot attach. Plaintiff even appears to acknowledge that these claims largely rise or fall with the Court's conclusion on probable cause above. Indeed, Plaintiff cites no cases at all and makes no specific arguments why his Virginia state law claims should prevail. Dkt. 17; Dkt. 26.

A claim of assault and battery "can be defeated by a legal justification for the act," and, under Virginia law, officers "are legally justified in using reasonable force to execute their lawful duties." *Ware v. James City Cty.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009). The Fourth Circuit has also recognized that, under Virginia law, an officer cannot be subjected to civil liability for assault and battery (or false imprisonment) "when the officer acted in good faith and with probable cause." *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011) (applying holding in *DeChene v. Smallwood*, 311 S.E.2d 749, 752 (Va. 1984)).

A claim of false imprisonment in Virginia is governed by "nearly identical principles" as those governing false arrest under the Fourth Amendment. *King v. Darden*, No. 3:17-cv-742, 2019 WL 1756531, at *5 (E.D. Va. Apr. 19, 2019), *appeal filed* (4th Cir. May 22, 2019). "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011). Moreover, if the officer had sufficient probable cause to obtain the warrant, properly issued by the magistrate, there is no false imprisonment. *See id.*

Claims of malicious prosecution are not favored in Virginia. *Shrewsbury v. Williams*, No. 7:18-cv-467, 2020 WL 591511, at *13 (W.D. Va. Feb. 6, 2020); *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007). To state a claim for malicious prosecution, a plaintiff must demonstrate that the prosecution was: "(1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff."

15

*Shrewsbury*, 2020 WL 591511, at *14 (citing *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 625 (E.D. Va. 2010)).

For the reasons described above, Deputy Hartman had probable cause to arrest Plaintiff for driving under the influence. *See supra* at 9–10, 13. Because a showing of probable cause defeats each of Plaintiff's Virginia state law claims, the Court therefore will award summary judgment to Deputy Hartman on Plaintiff's three Virginia state law claims as well.

## Conclusion

For these reasons, the Court will grant Deputy Hartman's Motion for Summary Judgment, Dkt. 24, and award summary judgment to Deputy Hartman on all of Plaintiff's claims. The Court will further deny as moot Deputy Hartman's Motion to Dismiss, Dkt. 10, except insofar as such arguments were incorporated by reference in the Motion for Summary Judgment.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 25th day of March, 2020.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE